**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| ERIK A. AHLGREN, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company, | Civil No. 19-1607 (JRT/LIB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAPITAL ONE BANK (USA), N.A. and CABELA'S INCORPORATED, | |
| Defendants. | |

---

Erik A. Ahlgren, **AHLGREN LAW OFFICE, PLLC**, 220 West Washington Avenue, Suite 105, Fergus Falls, MN 56537, for plaintiff.

Joseph C. Wylie **K&L GATES LLP**, 70 West Madison Street, Suite 3100, Chicago, IL 60602; Nelson Moon Hua, **K&L GATES LLP**, 1717 Main Street, Suite 2800, Dallas, TX 75201; Patrick M. Biren, **STICH ANGELL KREIDLER & UNKE P.A.**, France Place 3601 Minnesota Drive, Suite 450, Minneapolis, MN 55435, for defendants.

This case arises out of Jerry Hennessey's unauthorized use of funds from his prior employer, the Ashby Farmers Co-Operative Elevator Company (the "Co-Op"). From 2003 to 2018, Hennessey paid over $5 million of the Co-Op's funds to himself or directly to third parties for his personal benefit. Among others, Hennessey paid Defendants Capital One Bank ("Capital One") and Cabela's Inc. ("Cabela's") with checks from the Co-Op to cover charges Hennessey had accrued on his personal Cabela's Club Visa credit card while

on exotic hunting trips. Upon discovery of the fraud in 2018, the Co-Op ceased operations and appointed an Assignee, Plaintiff Erik Ahlgren, to pursue claims and remedies on behalf of the Co-Op and its creditors. Ahlgren brought this action on May 24, 2019, seeking to void the unauthorized payments to Defendants. Ahlgren alleges three Counts: (I) actual fraud pursuant to the Minnesota Uniform Voidable Transactions Act ("MUVTA"), Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to the MUVTA, Minn. Stat. §§ 513.45(a), 513.47; and (III) unjust enrichment.

Presently before the Court is Defendants' Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court will grant the motion as to Count III but deny the motion as to Counts I and II, while also denying without prejudice Defendants' statute of limitations argument.

## BACKGROUND

**I. FACTUAL BACKGROUND**

The Co-Op is a grain farmers' cooperative based in Ashby, Minnesota. (First Am. Compl ("FAC") ¶¶ 1, 15–16, June 24, 2019, Docket No. 9.) The Co-Op purchases grain from local farmers, who are also owners of the Co-Op, and sells it to grain markets. (*Id.* ¶ 16.) In 1989, the Co-Op hired Jerry Hennessey as its general manager. (*Id.* ¶ 17.) In this role, Hennessey "had access and control over [the Co-Op's] assets" and bank accounts and "was trusted to act in the best interest of [the Co-Op]." (Decl. of Erik A. Ahlgren

("Ahlgren Decl.") ¶ 4, Ex. D at 58, Aug. 2, 2019, Docket No. 25.)[1] Between June 2003 and September 2018, Hennessey received over $5.4 million in unauthorized funds from the Co-Op by writing checks from the Co-Op to himself and directly to third parties to pay for personal bills, home improvement projects, property purchases, and domestic and international hunting trips. (FAC ¶¶ 18–20, 24.) Hennessey hid the true nature of the checks from the Co-Op by coding them as feed purchases or other ordinary expenses. (*Id.* at 19.)

Capital One is a national credit card issuer that conducts business in Minnesota and has offices in Virginia. (*Id.* ¶ 3.) Cabela's is a national sports outfitter that operates stores in Minnesota and has its principal place of business in Sidney, NE. (*Id.* ¶ 2.) From 2008 to 2018, Hennessey cut at least $1,191,852.34 in Co-Op checks, made payable to Defendants, to cover personal charges Hennessey made on his Cabela's Club Visa card issued by Defendants. (*Id.* ¶ 20.) The payments related to Hennessey's personal, exotic hunting trips and did not benefit the Co-Op in any way. (*Id.* ¶ 19–22.) Ahlgren alleges that Defendants wrongfully accepted the Co-Op checks even though their contractual relationship was with Hennessey and not with the Co-Op. (*Id.* ¶ 23.)

---

[1] While not actually listed as one of the exhibits in ¶ 4 of the Ahlgren Declaration, the state court "Findings of Fact, Conclusions of Law, Order for Judgment of Jerome Hennessey" in *Ashby Farmers Co-Op v. Hennessey* is marked as Exhibit D on page 54 of the PDF pagination of Docket No. 25. Moreover, page numbers listed as pincites to the exhibits contained in the Ahlgren Declaration refer to the PDF pagination of Docket No. 25 as a whole.

According to Ahlgren, Hennessey fraudulently and intentionally concealed the Co-Op checks in an effort to hinder, delay and defraud the government, governmental authorities, the Co-Op and the Co-Op Board of Directors. (*Id.* ¶ 24.) Ahlgren claims the Co-Op was insolvent the entire time the Co-Op checks were being issued to Defendants but that Hennessey concealed the Co-Op's insolvency by (1) overstating the value of grain and product inventory, (2) failing to fully disclose accounts payable to Co-Op members for grain delivered, and (3) valuing equity in other cooperatives based on their projected value as opposed to their current fair market value. (*Id.* ¶ 26.) Hennessey also obtained a $7 million-plus line of credit for the Co-Op in his ongoing efforts to conceal his fraud and cover up the Co-Op's expenses. (Ahlgren Decl. ¶ 4, Ex. C at 42–43.)

The fraud was discovered in September 2018. (FAC ¶ 24.) As a result of Hennessey's fraud, the Co-Op was forced to close and has been unable to pay its debts. (FAC ¶ 16; Ahlgren Decl. ¶ 8, Ex. G at 74.) [2] In December 2018, the Co-Op executed an assignment (the "Assignment") with Erik Ahlgren for the benefit of the Co-Op's creditors. (FAC ¶ 7; Ahlgren Decl. ¶ 8, Ex. G at 74.) Pursuant to Minnesota Statutes, chapters 576 and 577, Ahlgren has committed to liquidating and administering the Co-Op's assets and may pursue any claim or remedy that could be asserted by the Co-Op or by a creditor of the Co-Op. (FAC ¶¶ 8, 10.) According to reports filed with the Assignment, the Co-Op has

---

[2] The Assignment is listed as Exhibit F in paragraph 8 of the Ahlgren Declaration, but is marked as Exhibit G.

forty-three creditors, most of which are based in Minnesota. (Ahlgren Decl. ¶ 8, Ex. G at 81–82.) On February 14, 2019, Hennessey pleaded guilty to mail fraud and income tax evasion. (*Id.* ¶ 4, Ex. C at 41.)

## II.   PROCEDURAL BACKGROUND

Ahlgren brought this action in Grant County District Court on May 24, 2019, alleging three Counts: (I) actual fraud pursuant to Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to Minn. Stat. §§ 513.45(a), 513.47; and (III) unjust enrichment. (Notice of Removal ¶ 2, Ex. 1 ¶¶ 30–52, June 18, 2019, Docket No. 1.) On June 18, 2019, Defendants removed the case to this Court. (*Id.* at 6.) On June 24, 2019 Ahlgren filed an amended complaint. (FAC at 12.) Presently before the Court is Defendants' Motion to Dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6). (Mot. to Dismiss, July 15, 2019, Docket No. 16.)

## DISCUSSION

## I.   STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"When considering a Rule 12(b)(6) motion, 'the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Defendants seek dismissal of Count I for actual fraud, Count II for constructive fraud, and Count III for unjust enrichment. Defendants also argue that at least some of the claims are precluded by the statute of limitations. Each argument is considered in turn below.

## II. COUNT I: ACTUAL FRAUD

Defendants argue that Ahlgren's claim of actual fraud fails because (1) Hennessey's intent cannot be imputed to the Co-Op and (2) even if intent could be imputed, Ahlgren

has failed meet Rule 9(b)'s heightened pleading standard and failed to properly plead badges of fraud.

### A. Imputation

The MUVTA provides that "a transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1). The MUVTA is a remedial statute and should be interpreted broadly. *Reilly v. Antonello*, 852 N.W.2d 694, 699, 701 (Minn. Ct. App. 2014). "Intent for a corporation under [MUVTA] is still derived from a natural person in control." *In re Petters Co., Inc.*, 557 B.R. 711, 734 n. 32 (Bankr. D. Minn. 2016).

Defendants argue imputation is only proper under MUVTA if the corporate agent has both legal and formal control. Defendants point to *Reilly*, noting the corporate agent there was the sole shareholder, officer, and director of the corporation and thus, exerted both formal and legal control of the company. Here, Defendants argue imputation is improper because Hennessey was not the sole shareholder, officer, and director. Instead, Hennessey had supervisors, namely the Board of Directors.

Defendants' argument misses the point. First, the MUVTA is to be interpreted broadly and Defendants' proposed rule would require a narrow interpretation because imputation would only be allowed in situations where the corporate actor was the sole shareholder, officer, and director.

Second, corporate intent is derived from a natural person in control. While neither party presents mandatory authority from the Minnesota Supreme Court determining what type of "control" the corporate agent must exert for imputation to be proper, the Court finds *In re Tribune Company Fraudulent Conveyance Litigation* instructive. *See* 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017). There, the court was faced with a similar New York state law and a trustee's attempt to claw back money from an alleged fraudulent, billion-dollar leveraged buyout. *Id.* at *1. In attempting to discern corporate intent, the Court noted:

> where the transferor in an alleged fraudulent conveyance is a corporation, as opposed to a real person, determining the transferor's actual intent becomes more difficult to discern. Because all corporations must act through agents, courts assessing the intent of a corporation in a fraudulent conveyance claim will look to the intent of the corporate actors who effectuated the transaction on behalf of the corporation.

*Id.* at *5 (citations omitted).

Specifically, "the intent of the debtor's officers may be imputed to the debtor if the officers were in a position to control the disposition of the transferor's property, thereby effectuating the underlying offense." *Id.* at *6 (cleaned up). In other words, to determine whether an officer's intent can be imputed to the corporation, *In re Tribune* states that a Court must look to whether the "officer exercised 'control' over the transaction" that effectuated the alleged fraud. *Id.* at *7. The *In re Tribune* transaction was a leveraged buyout that required approval of the Board of Directors. *Id.* at *1, *6. Because the Board controlled the transaction, the intent of an officer who failed to exert

control over the Board of Directors could not be imputed to the corporation. *See id.* at *7.

Here, however, Hennessey alone controlled the day-to-day activities of the Co-Op and did not need a Board's approval to write checks. Imputation of Hennessey's intent to the Co-Op is therefore appropriate because Hennessey was "in a position to control" the transaction that "effectuat[ed] the underlying offense." *Id.* at *6; *see also Reilly*, 852 N.W.2d at 701 (discussing how defendant, as sole shareholder, officer, and director controlled the disposition of the property at issue); *In re Petters Co.*, 557 B.R. at 734 n.32 (noting that "intent for a corporation under [MUVTA] is still derived from a natural person in control").

Accordingly, Defendants' argument regarding imputation fails and the Court will deny dismissal on these grounds.

### B. Rule 9(b) and Badges of Fraud

Defendants also argue Ahlgren has failed to adequately plead badges of fraud or meet Fed. R. Civ. P. 9(b) heightened pleading standard.

"It is undisputed that claims under the [MUVTA] must comport with Rule 9(b)'s particularity requirements." *S.E.C. v. Brown*, 643 F. Supp. 2d 1077, 1080 (D. Minn. 2009). Rule 9(b) requires that the plaintiff "identify the 'who, what, where, when, and how' of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556

(8th Cir. 2006) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir.2003)).

"Because the intent to defraud creditors is rarely susceptible of direct proof, courts continue to rely on 'badges of fraud' to determine whether a transfer is fraudulent." *Citizens State Bank Norwood Young America v. Brown*, 849 N.W.2d 55, 60 (Minn. 2014). There are eleven statutorily recognized badges of fraud under the MUVTA. *See* Minn. Stat. § 513.44(b). While there is no precise number of badges that must be present to create a presumption of fraudulent intent, there must at least be a "confluence of the 'badges of fraud.'" *Kelly v. Armstrong*, 206 F.3d 794, 798 (8th Cir. 2000).

First, at least the same three badges the Court found sufficient to survive a motion to dismiss in the related *Ahlgren v. Link* case are present here, including: "(1) that the transfers were concealed or disguised as ordinary purchases; (2) that the value of the consideration received by the Co-Op (nothing) was not reasonably equivalent to the amount of the obligation incurred; and (3) that the Co-Op became insolvent after the transfers were made." No. 19-305 (JRT/LIB), 2019 WL 3574598, at *5 (D. Minn. Aug. 6, 2019).

Second, even without considering the badges, Ahlgren has adequately pleaded the "who, what, where, when, and how" of the alleged fraud under Rule 9(b). The "who" includes Capital One, Cabela's, and Hennessey. The "what" includes over $1,000,000 of the Co-Op's funds. The "where" and "when" are Minnesota from at least 2008–2018.

And the "how" is alleged by allegations Hennessey coded the Co-Op's checks as purchases of ordinary business materials. *See id.*

Accordingly, Defendants arguments regarding Rule 9(b) and badges of fraud also fails, and the Court will deny Defendants' Motion to Dismiss Count I for actual fraud.

### III. COUNT II: CONSTRUCTIVE FRAUD

Defendants move for dismissal of Count II for constructive fraud. "To cover the variety of situations in which debtors may attempt to place assets beyond the reach of creditors, [MUVTA] allows creditors to recover assets that a debtor transfers with fraudulent intent as well as those transfers that the law treats as constructively fraudulent." *Finn v. Alliance Bank*, 860 N.W.2d 638, 644 (Minn. 2015) [hereinafter *Finn II*] (cleaned up) (citing Minn. Stat. §§ 513.44(a)(1)–(2), 513.45). "[C]onstructive fraud[] does not require proof of fraudulent intent." *Id.* at 645. Instead, "a claim for constructive fraud turns on a creditor's ability to show that the debtor made the transfer 'without receiving [a] reasonably equivalent value,' and that the debtor was insolvent, or the transfer made the debtor insolvent or unable to pay its debts." *Id.* (quoting Minn. Stat. §§ 513.44(a)(2), 513.45(a)). "A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." Minn. Stat. § 513.42(a).

Defendants argue that Ahlgren failed to plausibly allege that the Co-Op was insolvent at the time the unauthorized checks were issued or became insolvent as a result of issuing the unauthorized checks. The Court disagrees. Insolvency is a factual question

that "do[es] not need to be supported by the sort of detailed facts expected to be uncovered at discovery." *In re: RFC & ResCap Liquidating Tr. Litig.*, No. 13-3451 (SRN/HB), 2017 WL 1483374, at *7 (D. Minn. Apr. 25, 2017). At this stage of the proceeding, Ahlgren has met his burden. Ahlgren's complaint paints a detailed picture of the extensive, multimillion-dollar fraud that took place. Defendants allegedly received over $1.1 million in unauthorized funds, continuing until the month the fraud was discovered. The continuing nature of the payments, coupled with the alleged fact that Hennessey obtained a $7 million line of credit to keep the Co-Op afloat,[3] establish plausibility that the Co-Op was insolvent at the time of the transfers or became insolvent as a result of the transfers.

Accordingly, the Court finds Ahlgren has adequately pleaded a claim for constructive fraud and will deny Defendants' Motion to Dismiss Count II. The Court notes, however, that while Ahlgren his met his burden at the pleading stage, to survive a motion for summary judgment Ahlgren must show, "asset-by-asset and transfer-by-transfer," that the Co-Op was insolvent at the time of each transfer or became insolvent as a result of each transfer. *Finn II*, 860 N.W.2d at 647.

## IV.  COUNT III: UNJUST ENRICHMENT

---

[3] The Court considers the Plea Agreement here because it is a public record and does not contradict the pleadings. *Smithrud*, 746 F.3d at 395.

Defendants seek dismissal of Count III for unjust enrichment. "It is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law." *Bartholomew v. Avalon Capital Group, Inc.*, 828 F. Supp. 2d 1019, 1030 (D. Minn. 2009) (cleaned up). A plaintiff then "may not simultaneously maintain his claims for avoidance of transfers as fraudulent under statute, and his claims for monetary recovery under the equitable theory of unjust enrichment, as to the same transfers and on the same pleaded facts." *In re Petters Co.*, 499 B.R. at 375.

Ahlgren pleads both statutory claims under MUVTA and equity claims for unjust enrichment on the same facts. The Court therefore finds that Ahlgren's claim in equity is precluded by his claim at law. *Bartholomew*, 828 F. Supp. 2d at 1030; *see also Link*, 2019 WL 3574598, at *6.

Accordingly, the Court will grant Defendant's Motion to Dismiss Count III with prejudice for unjust enrichment.

## V. STATUTE OF LIMITATIONS

"The [MUVTA] does not contain a statute of limitations." *Finn v. All. Bank*, 838 N.W.2d 585, 591 (Minn. Ct. App. 2013), *aff'd as modified*, 860 N.W.2d 638 (Minn. 2015) [hereinafter, *Finn I*]. Thus, the standard six-year statute of limitations period applies to claims for actual and constructive fraud brought under MUVTA. *See* Minn. Stat. § 541.05; *Finn II*, 860 N.W.2d at 658 (stating six-year limit on claims for actual fraud); *Finn I*, 838 N.W. 2d at 594 (stating six-year limit on claims for constructive fraud).

The statute of limitations does not begin to run, however, until the aggrieved party has discovered "facts constituting the fraud." *Finn II*, 860 N.W.2d at 658. The statute of limitations is normally an affirmative defense that must be raised in an answer as opposed to a 12(b)(6) motion to dismiss. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) ("In order for a party to avail itself of this defense, the party must specifically plead the defense in its answer.") Even so, a party may raise the issue in a 12(b)(6) motion when it "appears from the face of the complaint itself that the limitation period has run." *Id.* (quoting *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir.1985)).

Defendants argue that while the true nature of the checks was hidden from the Co-Op, it was not hidden from the creditor-bank managing the bank account from which the checks were issued. In Defendants' view, because the creditor bank is an aggrieved party that knew or should have known the true nature of the checks, the statute of limitations began to run for each transaction at the time each check was issued. Thus, Defendants contend, Ahlgren is unable to recover any funds corresponding with any check issued before May 24, 2013—six years prior to Ahlgren filing this case.

Defendants' bare assertions that the creditor-bank knew or should have known about the fraud prior to 2018, however, are not enough to show that the limitations period has run on the face of the complaint. Instead, a facial reading of the complaint suggests that the statute of limitations did not begin to run until at least September 12, 2018—the date the Co-Op discovered the fraud. At a later phase of litigation, Defendants

may produce facts to impute knowledge onto the creditor-bank (or any other aggrieved party) at some point prior to 2018, and they may well be successful in arguing that some of the claims are barred. However, bare assertions that the creditor-bank knew or should have known are not enough for a dismissal at this stage.

Accordingly, the Court will deny Defendants' Motion to Dismiss claims based on the statute of limitations without prejudice.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) [Docket No. 16] is **GRANTED in part and DENIED in part as described herein;**

1. The Motion is **DENIED** as to Count I for actual fraud and Count II for constructive fraud;

2. The Motion is **DENIED without prejudice** as to the statute of limitations;

3. The Motion is **GRANTED with prejudice** as to Count III for unjust enrichment.

DATED: February 10, 2020  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court